IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| ZACHARY G. HEHMANN and BRIENNE D. HEHMANN, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Case No.: ) |
| ROSWELL HONDA; THOMAS W. KRUMLAND D/B/A ROSWELL HONDA; LINDA L. KRUMLAND D/B/A ROSWELL HONDA; T & L MOTORS, LLC D/B/A ROSWELL HONDA; KRUMLAND AUTO GROUP, LLC D/B/A ROSWELL HONDA, | ) ) ) ) ) ) ) ) |
| Defendants. | ) |

# COMPLAINT

Comes now the Plaintiffs, Zachary and Brienne Hehmann, and for their complaint against Defendants allege and state as follows:

1. Plaintiffs Zachary G. Hehmann ("ZHehmann") and Brienne D. Hehmann ("BHehmann") (collectively "Hehmanns") are husband and wife, natural persons and residents of Tulsa County, Oklahoma.

2. Roswell Honda is a trade name used by what is represented to be a Honda licensed dealership located in Roswell New Mexico. A search of the New Mexico Secretary of States website at https://portal.sos.state.nm.us/BFS/online/CorporationBusinessSearch for "Roswell Honda" returned a result from the state database of "no data found." Upon information and belief, this result indicates that there is not a corporation, limited liability corporation, partnership, or trade name of "Roswell Honda" registered or authorized to do business in the State of New Mexico.

1

3. Upon information and belief, Thomas W. Krumland ("TKrumland") and Linda L. Krumland ("LKrumland") ("collectively "Krumlands") are the owners/part owners of a business association or individuals d/b/a Roswell Honda. Further upon information and belief these individuals regularly conduct business in Roswell, New Mexico under this fictitious name. Upon information and belief, the Krumlands are residents of either New Mexico or Colorado.

4. Upon information and belief, T & L Motors, LLC ("T&L") is a Colorado limited liability company registered to conduct business in New Mexico and, along with the Krumlands, is an owner of Roswell Honda and conducts business in Roswell, New Mexico under this fictitious name.

5. Upon information and belief, Krumland Autogroup, LLC ("KALLC") is a Colorado limited liability company registered to conduct business in New Mexico and, along with Krumlands and T&L, is an owner of Roswell Honda and conducting business in Roswell New Mexico under this fictitious name.

6. In November of 2020, ZHehmann began searching on-line for a quality, dependable, safe, used minivan for his and his growing family's personal use.

7. ZHehmann found a 2017 Honda Odyssey VIN 5FNRL5H93HB002627 ("Odyssey") with 36,422 miles and a list price of $27,980.00.

8. The Odyssey was advertised as a Honda Certified Preowned Vehicle, with an additional limited warranty offered by Honda under Honda True Certified beyond the remaining manufacturer's warranty.

9. On November 18, 2020, ZHehmann called Roswell Honda to determine if the Odyssey was still available. He spoke with Jonathon Martinez ("Martinez") who stated that the

Odyssey was still available. ZHehmann also asked for clarification regarding "Certified Preowned Vehicles" and was told by Martinez that this would provide an additional 12-month, 12,000-mile comprehensive warranty.

10. Because of the distance between Roswell and Tulsa, OK the negotiations for the sale of the vehicle were conducted over the phone and online. The Hehmanns never saw the vehicle before signing the purchase contracts and relied on the dealer's representations about the vehicle and its condition.

11. Based on this information, ZHehmann offered $25,980 for the Odyssey, and Martinez indicated he would see what he could do.

12. In a follow up call later that day, Martinez represented that the Odyssey was traded-in by its original owner who he described as a lawyer who now lives in Texas. Martinez explained that this owner was looking to upgrade and not trading the Odyssey in because there was something wrong with it.

13. Martinez also stated that the dealership would not take $25,980 for the Odyssey due to funds Roswell Honda had put in it to pass Honda's certification process. ZHehmann offered $26,980 for the Odyssey, and Martinez stated he would call the dealership general manager to see if he would accept the offer.

14. Later that same day, Roswell Honda's used car manager, Ricardo Beltran ("Beltran"), called ZHehmann to arrange a down payment over the phone for the Odyssey. Beltran told ZHehmann that Roswell Honda would not take less than the list price but that this Odyssey was "better than" the other vehicles ZHehmann was looking at because it was a "Certified Honda" with lower mileage allowing more miles under the warranties.

15. Beltran told ZHehmann that because of the lower mileage, the certified preowned warranty would last longer after the Hehmanns purchased the Odyssey.

16. Upon information and belief, at all times relevant to this complaint Martinez and Beltran were employees of Roswell Honda and acting within their capacity as such employees.

17. Based on the representations by Martinez and Beltran on behalf of Roswell Honda, Hehmanns agreed to purchase the Odyssey and under a cover letter dated December 4, 2020, Joseph S. Salazar, Finance Manager for Roswell Honda, sent documents for Hehmanns to sign for the purchase of the Odyssey. This cover letter was under the letterhead of Krumland Auto Group.

18. As part of this paperwork, Roswell Honda sent a "Used Motor Vehicle Alteration/Damage Inspection Form" that indicated there were some paint chips that were not repaired but stated there were no noted safety issues, chassis or structural damage and no non-industry-standard repairs to the Odyssey.

19. On or about December 18, 2020, ZHehmann called and spoke with Martinez regarding the paperwork he received and asked in particular if the Odyssey was covered under warranty as a Certified Preowned Honda when it had unrepaired chips in the paint. Martinez reiterated that the Odyssey was under warranty as a Certified Preowned Vehicle, except for cosmetic items like scratches or dings in the paint, and that the damage was small enough that Honda could certify the vehicle without repairing the chips.

20. Hehmanns relied on the continuing representations that the Odyssey was a Certified Preowned Honda under a manufacturer's warranty, that it had been inspected by the dealership, that it met factory certification standards and the other representations made

       by Roswell Honda and executed and returned the purchase documents to Roswell Honda at its New Mexico address.

21. The purchase documents included a Retail Installment Sales Contract with a cash price, including sales tax, of $28,399.70 and, after application of a down payment of $5,910.50 and certain other fees were assessed, a balance due of $22,980.00.  This price did not include the cost of shipping the Odyssey to Oklahoma.

22. The Odyssey was shipped from New Mexico to Oklahoma on December 29, 2020 and delivered to Hehmanns on December 30, 2020.

23. The Odyssey as delivered was not in the condition as represented or expected for a Certified Preowned Vehicle, including scratches, dents and chips that existed at the time it was shipped, broken seats, stained carpet hidden under new floormats, stained seats, cut upholstery, and filth from dead roaches in the vents.

24. ZHehmann called to complain about the condition of the Odyssey at its delivery.

25. In response, Roswell Honda reasserted that the Odyssey was a certified preowned Honda under warranty and suggested taking it to local dealership to get the seat repaired under warranty.  As an alternative, Roswell offered to purchase the Odyssey from Hehmanns for $27,980.00 with the Hehmanns left responsible for all shipping costs, including returning it to New Mexico, all taxes, and all fees.

26. In an effort to avoid the financial losses incumbent in the offer to buy the Odyssey back, Hehmanns took the Odyssey to CarMax to get a quote for its purchase.  CarMax found that the Passenger rear door, Passenger Quarter, and Rear Bumper all needed repair and that the Odyssey had frame damage.

27. Upon information and belief, the Odyssey was in a collision prior to Hehmanns' purchase of the Odyssey that caused the frame damage noted by CarMax.

28. Upon information and belief, Roswell Honda knew or should have known about the prior collision and damage while conducting a multipoint inspection in the Honda Certified Preowned process along with the inspection mandated under New Mexico law.

29. Upon information and belief, the damage to the Odyssey is obvious to a person in the used car industry and was known to the person(s) who inspected the vehicle prior to shipping the vehicle to the Hehmanns.

30. Upon information and belief, the damage to the Odyssey makes it ineligible for certification as a Honda Certified Preowned Vehicle, and Roswell Honda knew that the Odyssey was ineligible for such certification.

31. Upon information and belief, the pre-existing damage to the Odyssey voids the manufacturer's warranty with respect to areas damaged by the earlier collision.

32. Upon information and belief, the pre-existing damage to the Odyssey voids the extended warranty afforded a certified preowned vehicle.

33. Upon information and belief, Roswell Honda represented on numerous occasions that the Odyssey was under warranty as a certified preowned Honda with knowledge that the Odyssey did not qualify for such status and that Honda would not warrant the Odyssey.

34. Upon information and belief, Roswell Honda intended the Hehmanns to rely on the repeated representations that the Odyssey was certified preowned, with the implication that it met all Honda standards to be certified, and under warranty.

35. The Hehmanns relied on these representations in deciding to purchase the Odyssey.

36. The Hehmanns suffered actual damages including out of pocket expenses, embarrassment, humiliation, fear, anger, frustration, loss of time, mental anguish, and loss of transportation.

**Count 1 -Violation of the Unfair Practices Act ("UPA"), NMSA §§ 57-12-1*et seq.***

37. All foregoing allegations are repeated here as if set forth in full.

38. Plaintiffs are persons as defined by NMSA § 57-12-2(A).

39. Defendants are engaged in "trade" or "commerce" as defined by NMSA § 57-12-2(C).

40. Roswell Honda made false and misleading statements or other representations regarding the Odyssey including that the Odyssey qualified as a Certified Pre-Owned Vehicle, was traded-in by its original owner, that the Odyssey was not traded in because there was something wrong with it, that the Odyssey met the manufacturer's specifications for additional warranty, and that the original warranty continued as well.

41. These are false statements related to the characteristics, uses and benefits of the Odyssey. Such false and misleading statements are an unfair or deceptive trade practice as defined by the UPA.

42. Roswell Honda failed to deliver the quality of product contracted for which is an unfair or deceptive trade practice as defined by the UPA.

43. In the alternative, Roswell Honda used exaggeration, innuendo, and ambiguity as to material facts which did deceive Hehmanns.

44. There is a gross disparity between the value of the Odyssey because of its actual condition and the price paid for the Odyssey. This is an unconscionable trade practice as defined by the UPA.

45. Roswell Honda willfully misrepresented the condition of the Odyssey and failed to provide the affidavit required by NM ST § 57-12-6. Such willful misrepresentation is an unlawful practice under the act.

46. Hehmanns have been harmed by Roswell Honda's violations of the UPA, loss of use of the Odyssey, and will incur additional harm and expense in replacing the Odyssey.

### Count 2 -Fraud/Deceit

47. All foregoing allegations are repeated here as if set forth in full.

48. Roswell Honda, through its employees, falsely stated that the Odyssey qualified as a Certified Pre-Owned Vehicle, was traded-in by its original owner, that the Odyssey was not traded in because there was something wrong with it, that the Odyssey met the manufacturer's specifications for additional warranty, and that the original warranty continued as well.

49. Roswell Honda made these representations either knowing they were false or with reckless disregard to the truth or falsity of the statements.

50. Roswell Honda intended that Hehmanns would rely on these statements in purchasing the Odyssey, and Hehmanns did in fact rely on these statements in deciding to buy the Odyssey.

51. Hehmanns have been harmed by Roswell Honda's false statements including loss of use of the Odyssey and will incur additional harm and expense in replacing the Odyssey.

### Count 3 -Breach of Express Warranty of Description NMSA § 55-2-313

52. All foregoing allegations are repeated here as if set forth in full.

53. Roswell Honda expressly described the Odyssey as a certified preowned vehicle that had met all of the manufacturer's requirements for a certified preowned vehicle.

54. The certification of the Odyssey as a certified preowned vehicle with additional manufacturer's warranty and was in the condition implied by such certification was basis of the bargain entered into and, in fact, a deciding factor for Hehmanns in purchasing the Odyssey.

55. The Odyssey does not conform to this description with multiple faults and non-conformities including frame damage that prevents it from conforming to this description.

56. Hehmanns have been harmed by Roswell Honda's false statements including loss of use of the Odyssey and will incur additional harm and expense in replacing the Odyssey.

### **Count 4 -Breach of Contract**

57. All foregoing allegations are repeated here as if set forth in full.

58. Hehmanns and Roswell Honda entered into an agreement for the purchase of a Honda Odyssey that passed the manufacturer's requirements for a Certified Preowned Vehicle with extended warranty.

59. Roswell Honda delivered an Odyssey that could not pass these requirements, has frame and other damage from a prior accident, and is unsafe to drive.

60. Hehmanns performed under the contract by paying the down payment and continuing to make the monthly payments when due.

61. Roswell Honda has breached the agreement by failing to deliver the vehicle as described and warranted by Roswell Honda.

62. Hehmanns have been harmed by the breach of the contract by Roswell Honda loss of use of the Odyssey causing additional financial losses and will incur additional harm and expense in replacing the Odyssey.

### Prayer for Relief

**WHEREFORE**, Plaintiffs respectfully pray for judgment against Defendants for damages in excess of $75,000.00 including:

A. Actual damages;

B. Punitive damages;

C. Attorneys' fees;

D. Interest and costs;

E. All other relief as may be proper and just.

Respectfully submitted,

**HUMPHREYS WALLACE HUMPHREYS, P.C.**

By: */s/ Robert David Humphreys*
Robert David Humphreys
Lucius James Wallace
1701 Old Pecos Trail, Suite B
Santa Fe, NM  87505
(505) 933-7026 / (918) 471-2223 -Fax
david@hwh-law.com
luke@hwh-law.com
**ATTORNEYS FOR PLAINTIFFS**

**JURY TRIAL DEMANDED**
**ATTORNEY LIEN CLAIMED**